## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

CASSIA ENRIGHT , A MINOR and :
DONALD ENRIGHT AND SANDRA :
ENRIGHT, AS PARENTS AND :
GUARDIAN OF CASSIA ENRIGHT and
DONALD AND SANDRA ENRIGHT IN
THEIR OWN RIGHT
302 Powell Road, Springfield, PA 19064

        :

           CIVIL ACTION

      v.   :

        :  NO. _____

SPRINGFIELD SCHOOL DISTRICT :
111 WEST LAMY AVENUE : **JURY TRIAL DEMANDED**
SPRINGFIELD PA, 19064 :

and        :

        :

DR. JOSEPH O'BRIEN,
SUPERINTENDENT
SPRINGFIELD SCHOOL DISTRICT, :
111 WEST LAMY AVENUE :
SPRINGFIELD PA, 19064 :

## <u>COMPLAINT</u>

## <u>INTRODUCTION</u>

1. Cassia Enright, a minor, by and through her parents Donald and Sandra Enright and

Donald and Sandra Enright, in their own behalf, assert claims for damages and a trial by jury

against the named defendants arising from the breach of their duty to protect Cassia from a sexual

assault, which occurred while Cassia was in the custody and control of employees of Springfield

School District. The action is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400. et. seq., Section 504 of the Rehabilitation Act of 1973, (The Rehabilitation Act"),  29 U.S.C. Section 794,  the Americans with Disabilities Act, 42 U.S.C. Section 12101, et. seq., the First and  Fourteenth Amendments to the United States Constitution, and 42 U.S.C. Section 1983.

**PARTIES**

2.      Plaintiff, Cassia Enright, is a minor, date of birth -10-5-94, who resides with her parents and guardians Donald and Sandra Enright at 302 Powell Road, Springfield, PA 19064. At all times relevant hereto, Cassia was a special needs student with the Springfield Pennsylvania School District, Springfield PA.

3.      Donald and Sandra Enright are adult persons residing at 302 Powell Road, Springfield, PA 19064 and at all times relevant hereto are the parents and guardians for Cassia Enright, a minor. All plaintiffs are citizens of the United States of America.

4.      The Springfield School District is a governmental entity which pursuant to State law and with receipt of a substantial amount of Federal funds, provides educational services to school aged children residing in Springfield, Delaware County, Pennsylvania. The Springfield School District encompasses Springfield Township and Morton Borough. It is governed by a nine-member board whose members have children attending the school district and is commissioned by the Commonwealth of Pennsylvania to administer and enforce the statutory mandate of the IDEA, 20 U.S.C. Section 1400. et. seq., and other related Federally Funded Programs to those

students and is located at  111 West Lamy Avenue Springfield Pa, 19064. All schools in

Springfield School District are advertized as , "after undergoing rigorous examination and

inspection, hav[ing] been designated "Blue Ribbon Schools" by the United States Department of

Education. Springfield [schools] [are] accredited by the Middle States Association of Colleges

and Secondary Schools and the Pennsylvania Department of Education. See

http://www.springfieldsd-delco.org/Superintendent/supintro.html.

5.      Defendant, Dr. Joseph O'Brien, is the Superintendent of Springfield School District and

has offices at  111 West Leamy Avenue Springfield, PA 19064. At all times relevant hereto, he

was the chief operating officer and person responsible for the administration, supervision and

implementation of statutory mandate of the IDEA, 20 U.S.C. Section 1400. et. seq., and other

related Federally Funded Programs to those students receiving services in those programs. At all

times relevant hereto, all employees of the Springfield School District were under the ultimate

supervision and control of Dr. O'Brien.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over plaintiff's claims the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400. et. seq., Section 504 of the Rehabilitation Act of

1973, (The Rehabilitation Act"),  29 U.S.C. Section 794,  the Americans with Disabilities Act, 42

U.S.C. Section 12101, et. seq., the First and  Fourteenth Amendments to the United States

Constitution and 42 U.S.C. Section 1983. under the aforestated statutes and Constitutional

provisions pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343 as these claims arise

under the Constitutional and laws of the United States.

7.      Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) as all Defendants are located in this judicial district and conduct business within this judicial district, and plaintiffs' claims arose within this Judicial District.

**STATUTORY AND REGULATORY BACKGROUND**

8.      The Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et. seq., (IDEA) and the regulations related thereto, 34 C.F.R. Section 300.1 et seq., 22 Pa. Code Chapters 14 and 342, require that responsible educational agencies provide disabled children with "free appropriate public education" (FAPE) and appropriate due process procedures to effectuate those rights. Under the IDEA, a school district, including the instant defendant, is required to identify every disabled child in its jurisdiction, 34 C.F.R. Section 300.125(a).

9.      The statute and regulations contemplate the implementation of a interrelated set of services through which a child identified as having special needs disability is evaluated, his or her qualifications are determined, and an appropriate program of special education with necessary "related services", including but not limited to transportation, is provided to such students.

10.     The vehicle for the implementation is the Individual Education Program (IEP) plan. The IEP is to be reasonably comprehensive to permit the subject child to obtain a "meaningful education benefit" and "child progress" in the least restrictive environment given the child's found needs. See e.g. Polk v. Central Susquehanna Intermediate Unit, 53  F.2d 171 (3d Cir. 1988) and 22 Pa. Code Section 14.1.

4

11.     Under and pursuant to 20 U.S.C. Section 1415 and 34 C.F.R. Section 300.511, the rights

set out in the IDEA are enforceable in the Federal Courts.

12.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C Section 794, (hereinafter "Section

504"),  proscribes discrimination against persons with a handicap, including students with

disabilities, participating in federally funded programs. It requires the identification of all disabled

students and the provision of appropriate special educational services, including but not limited

to services such as transportation. See 34 C.F.R. Section 104.1, et. esq.

13.     The Springfield School District is a recipient of extensive federal funds within the

definition and intent of Section 504.

14.     Section 504 defines a "handicapped person" as "any person who has a physical or mental

impairment which substantially limits one or more major life activities". 34 C.F.R. Section 104.3.

A "physical or mental impairment" is "any physical or psychological disorder". Id. The term

"major life activities" includes "functions such as caring for one's self"  . . .  learning and

working". Id.

15.     Section 504 requires recipients of federal funds to "provide a free appropriate public

education to each qualified handicapped person who is in the recipient's jurisdiction, regardless

of the nature and severity of the person's handicap". 34 C.F.R. Section 104.33 (a). The relevant

regulations define "appropriate education" as "the provision of regular or special education and

related aids and services that (i) are designed to meet individual educational needs of the

handicapped persons as adequately as the need of non-handicapped persons are met and (ii) are

5

based on adherence to the procedures that satisfy the requirements of Section 104.34, 104.35 and

104.36." See 34 C.F.R. Section 104.33(b).

16.     Under and pursuant to the IDEA and Section 504, where school districts fail to provide

appropriate educational or educational related services, the parents of the child may seek court

relief, including but not limited to damages. 20 U.S.C. Section 1415.

17.     Under both the IDEA and Section 504, school districts are required to provide

appropriate, safe and secure transportation to students with disabilities, under and pursuant to

the IDEA requirements, including but not limited to providing transportation as "related

service(s)"; "assistive technology" and "travel training".

18.     Specifically under the IDEA, transportation is a "related service', which school districts

are required to provide after an appropriate evaluation of a child's need for such transportation

services. All transportation services provided are to be "safe, adequate and appropriate" to the

child's educational needs. 20 U.S.C. Section 1410(22) and 34 C.F.R. Section 300.24(a) and

(b)(15). Other regulations provide that transportation services are included as a "non-academic

service" which is ancillary to meet the child's educational goals. 34 C.F.R. 300.306.

19.     Section 504 similarly requires appropriate transportation services to meet the special

educational needs of a child with disabilities. 34 C.F.R. Section 104.33(b) and (c); 104.37(a)(2).

20.     The IDEA requires that educational agencies are required to provide appropriate "travel

training" to students with disabilities, which are statutorily intended to move a student safely

during the mandated transportation. 34 C.F.R. Section 300.26(a)(2)(ii); 300.26(b)(4).

6

21.     Under and pursuant to the Americans with Disabilities Act, appropriate and nondiscriminatory transportation services must be provided  by public agencies in a safe, nondiscriminatory, efficient and dignified manner. 42 U.S.C. Sections 12131 to 12150.

**FACTUAL ALLEGATIONS**

22.     Cassia Enright is a minor child, born October 5, 1994, residing with her parents, Donald and Sandra Enright.

23.     At all times relevant hereto she was an enrolled student in the Springfield School District.

24.     At all times relevant hereto, the Springfield School District was the recipient of federal funds for the provisions of educational services to all students, including to Cassia Enright.

25.     At all times relevant hereto, all actions of the defendants were taken under color of state law.

26.     Cassia was diagnosed with Attention Deficient/Hyperactivity Disorder ("ADD"), combined type, and Asperger's Disorder by Dr. Bertram Ruttenberg in November, 1988.

27.     Cassia has been in continuous treatment, as needed for Aspergers and ADD, from that date to the present.

28.     Cassia attended the Elwyn Developmental Preschool in Media, Pennsylvania in 1999.

29.     In September, 2000, Cassia began kindergarten at the Woodlyde School in Stafford, PA.

30.     Woodlyde is a specialized educational facility for students with these disorders.

31.     Cassia's diagnosis and attendance at Woodlyde were known to and approved by the Springfield School District.

32.     In or around 2000, the defendant School District agreed in an IEP to place Cassia at Woodlyde and provide appropriate transportation to and from that facility.

33.     That transportation was in a school van, with age appropriate children.

34.     In or around November, 2001, defendant's Assistant Manager of Transportation, Pat Schultz,  advised Mr. and Ms. Enright by telephone that the defendant School District was unilaterally changing Cassia's transportation, from that which had been agreed in the on-going IEP.

35.     The unilaterally imposed new transportation arrangement required Cassia to be transported on a bus with non-age appropriate students.

36.     The Assistant Director of Transportation for the defendant school district advised Mr. and Ms. Enright that the transportation change was non-negotiable, and that they had no alternative but "to take it".

37.     However, the defendant school district,  by and though its employees,  represented to Mr. and Ms. Enright that the new transportation arrangement would nevertheless include appropriate supervision and be similarly safe as the transportation agreed to in the IEP .

38.     The Enrights relied on these representations and, believing that they had no choice, acceded to the unilateral transportation changes.

39.     The defendant school district did not provide the Enrights with written notice of this proposed change.

40.     The defendant school district did not provide the Enrights with oral or written notice that

8

they had a right to contest this unilateral chance in the transportation arrangement.

41.      The Enrights were not aware that they had any due process right to appeal or seek review of this unilateral change in the transportation arrangement.

42.      The School District knew or should have known that similarly situated parents objected to this change and the transportation of their child with non-age appropriate students.

43.      The School District specifically knew that the parents of a minor male student, who was of a similar age to Cassia, objected to the placement.

44.      This minor male student was set to ride the bus three days per week.

45.      The School District agreed to supply this male student with an aide during the three days he rode this bus.

46.      The School District did not notify the Enrights of this aide arrangement,  and did not offer the Enrights the same or similar aide arrangement.

47.      The "new transportation" began in or around late November, 2001.

48.      The transportation included the transport of at least two adolescent male teens.

49.      The defendant school  district knew, should have known,  or could have ascertained with reasonable diligence that the adolescent teens had dangerous behavioral tendencies.

50.      Upon information and belief one of the adolescent teens, designated hereinafter as "J.W.", was in attendance at the Devereaux School because of severe behavioral problems.

51.      Upon information and belief J.W. had been sent to this school because of severe behavioral problems which occurred in the regular classes at the defendant school district.

9

52.    J.W's behavioral problems included,  but were not limited to, severe acting out, manipulation, refusal to follow authority and public displays of aggression.

53.    A second adolescent, herein designated as "T.P"., was also placed in a special education school and it is believed and therefore averred that TP was known to the defendants as having behavioral problems

54.    The Enrights were not provided specific information as to the known behavioral problems of the older adolescents that would be riding the bus with Cassia.

55.    By happenstance, the bus driver for the new transportation was a person who had transported Cassia before and was familiar with her special needs.

56.    This bus driver took steps to keep Cassia physically separated from the older teen- agers.

57.    In or around late April, 2003, the male bus driver suffered an accident and was replaced by a female bus driver.

58.    Upon information and belief, this female replacement bus driver was not apprised of Cassia' special needs or sufficiently trained in any skills necessary to assure Cassia safe transport.

59.    In April, 2002,  the older male adolescent, J.W. ,  began to engage in severe acting out behavior,  towards the female replacement bus driver.

60.    In early or mid April, 2002,  J.W. engaged in an aggressive episode of acting out behavior which so frightened or intimated the female substitute bus driver, that she refused to drive the bus.

61.    The female substitute bus driver was replaced by an even less trained male bus driver, who on information and belief had no or insufficient knowledge of Cassia's vulnerabilities.

62.    The school district installed a "taping system" on the bus.

63.    Upon information and belief, this taping system was aimed at deterring improper student conduct, but did not function properly and was not a reasonable or adequate substitute for supervision by properly trained employees.

64.    Upon information and belief, the new substitute bus driver was not apprised of Cassia' special needs or sufficiently trained in any skills necessary to assure Cassia safe transport.

65.    The Enrights were not advised of that the female bus driver had left the bus.

66.    The Enrights were not advised that the female bus driver had alleged that J.W. had acted out aggressively toward her.

67.    The Enrights were not advised that the female bus driver was replaced by a substitute male driver.

68.    On or about April 22, 2002, Cassia was being transported on this bus from her school at Woodlyde to her home.

69.    Cassia was on the bus with the male substitute bus driver and two adolescent males, J.W. and T.P.

70.    At some time during the course of this ride, one of the adolescent males, believed to the T.P. engaged in a real or simulated sexual act of masturbation.

71.    The other adolescent male, believed to be J.W. physically forced Cassia to observe the

11

actions of T.P. and verbally urged Cassia to engage in sexual contact with T.P.

72.     The adolescent males verbally told Cassia to perform sexual acts with T.P and/or  made threats to Cassia that she must observe the incident and that she would suffer retaliation, if she related the incident.

73.     Cassia was severely traumatized by the incident.

74.     When she arrived at home, she would not speak to her father.

75.     Cassia began "acting out", but would not tell her parents the entire incident on the bus.

76.     On April 22, 2002, Cassia told her mother that an incident happened on the bus of a sexual nature.

77.     Mrs. Enright immediately contacted the Springfield police and ultimately spoke with a rape advocacy organization where Cassia was interviewed by a counsellor, to whom Cassia related facts which caused  the counsellor to conclude that Cassia was a victim of a sexual assault.

78.     During the last week of April and early May, 2002, Cassia continued to psychologically act out.

79.     In or around early May, 2002, Cassia was evaluated by her treating psychiatrist and determined to be suffering from Post Traumatic Stress Disorder. (PTSD)

80.     The psychiatrist concluded that the cause of the PTSD was the April 22, 2002 sexual assault.

81.     Cassia was placed on medication and given intensive therapy for the found conditions.

82.      Nonetheless,  for many following months, Cassia's psychological condition deteriorated

12

and Cassia became increasingly dependent on her mother for activities of daily living. Cassia suffered with "hypervigilence", engaged in "high risk, self endangered behavior, suffered frequent, severe, intense panic episodes, manifested in "hair twisting" which required a haircut,  all of which required her to be constantly monitored. Her panic episodes and anxiety often caused her to become injured.

83.    Cassia grew hostile toward her parents and particularly aggressive toward her father, and her older brother and began to exhibit fear of teen-aged males, all of which caused significant psychological distress and trauma to her and the Enright family.

84.    In May, 2002, while at a playground with her parents, she attempted to commit suicide or harm, by throwing herself into vegetation and hanging dangerously from a gym apparatus, while threatening to harm herself.

85.    A short time later, while she was riding with her father, Cassia again attempted suicide by opening a passenger door while the automobile was travelling at approximately 40 miles  per hour and attempting to jump from the moving automobile.

86.    Mr. Enright was able to stop the car, pull over,  physically restrain and calm Cassia.

87.    The incident of April 22, 2002 negatively affected Cassia's educational advancement and her treatment by increasing the problems related to her disability, the PTSD and related symptoms.

88.    From early May, 2002 to the present, Cassia has been in continual therapy for the psychological trauma related to the incident.

89.     After the incident a criminal investigation was commenced.

90.     Cassia, due to her condition and the exacerbation caused by the PTSD was not able to verbalize completely what occurred on April 22, 2002.

91.     However, the police determined that an incident did occur.

92.     J.W. and T.P.  acknowledged in writing that they acted "inappropriately" towards Cassia on  April 22, 2002.

93.     On or about April 22, 2002, the defendants were placed on notice that Cassia was sexually assaulted  on the school bus.

94.     This notice was information of an important public nature -- related to the safety of Cassia and all school aged children under the care and control of the defendants.

95.     Instead of responding with support, the defendants engaged in a campaign of harassment and retaliation directed to Cassia and her parents.

96.     Upon information and belief, this campaign was based in whole or in part on an interest of the defendants to deflect and responsibility for their actions, which proximately caused the April 22, 2002 incident.

97.     This defendants were not similarly hostile to the Enrights prior to receiving notice of the April 22, 2002 incident.

98.     To this date, Cassia continues to suffer severe trauma proximately related to the April 22, 2002 incident which is reasonably expected to continue indefinitely.

99.     To this date, Sandra and Donald Enright have suffered and continue to suffer distress

related to the negative impact on their relationship to Cassia proximately related to the April 22, 2002 incident and the defendants' subsequent conduct.

100.    From the date of the incident to the present, the Enrights have been required to expend significant sums of money for Cassia's therapy and treatment for the exacerbation of Cassia's condition proximately caused by the incident of April 22, 2002.

101.    It is reasonably expected that Cassia's therapy need will continue in the future and that the Enrights will have future expenses related thereto.

102.    Cassia Enright's rights under the aforementioned Statutes and provisions were federal and state entitlements, under law, and involved property and liberty interests which were abridged, withdrawn, limited, or denied without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C Section 1983.

103.    Defendants had a duty under the law and the Constitution of the United States and Pennsylvania to provide safe, proper special education services, including transportation services for disabled and vulnerable students such as Cassia Enright but breached that duty.

104.    The incident of April 22, 2002 and the injuries, losses, damages, trauma and harm to Cassia Enright, Sandra Enright and Donald Enright are a direct and proximate result of the actions of the defendants taken under color of state law.

105.    The defendants' breaches and violations as set out hereinbefore increased the risk of harm to Cassia Enright.

**LEGAL CLAIMS**

**COUNT I**

PLAINTIFFS v. INDIVIDUAL DEFENDANT
AND THE SPRINGFIELD SCHOOL DISTRICT
PURSUANT TO 42 U.S.C. § 1983- Failure to Train

106.   Plaintiff incorporates by reference ¶¶ 1 to 105 as if fully set out herein .

107.   The conduct of the named defendants  created a pervasive and offensive hostile sexual atmosphere in violation of Cassia Enright's exercise of her rights to the Constitution of the United States, and deprived her of constitutional rights as guaranteed by law.

108.   As a result of these wrongful actions, plaintiff, Cassia, has suffered trauma, pain and distress.

109.   Defendants O'Brien and Springfield School District are liable for the wrongful conduct of their employees, as the decision makers conceived and/or failed to create and implement a policy and practice of properly training bus personnel and employees to protect Cassia Enright.

110.   Defendants are liable for the wrongful conduct of the School District's employees, as the decision makers failed to train and supervise its supervisors, agents and employees to avoid such pervasive and offensive hostile conduct against known,  vulnerable minor, special education, female students, such as Cassia.

111.   Defendants are liable for the wrongful conduct of the School District's employees, as the decision makers  permitted and condoned a  policy and practice of not properly training

16

employees who were charged with the care and custody of students with disabilities and special needs.

112.    As a result of defendants' wrongful conduct, plaintiff suffered the harm and damages averred to above.

**COUNT II**

PLAINTIFFS V. INDIVIDUAL DEFENDANT
AND THE SPRINGFIELD SCHOOL DISTRICT
PURSUANT TO 42 U.S.C. § 1983- DUE PROCESS

113.    Plaintiff incorporates by reference ¶¶ 1 to 105 as if fully set out herein .

114.    Cassia Enright was an exceptional, disabled and handicapped student as defined by the IDEA and Section 504 of the Rehabilitation Act.

115.    The change in transportation was not done pursuant to a new IEP.

116.    The change was not provided the Enright family in writing.

117.    The Enright family was not provided an oral or written notice of any due process rights related to this change.

118.    The defendants represented to the Enrights that the new transportation would be appropriate and safe for Cassia.

119.    Relying on that representation, the Enrights acceded to the unilateral change to the IEP by the defendants.

120.    In addition, without knowledge to the Enrights, the defendants agreed to provide a minor male student of Cassia's age group with an aide on the new transportation arrangement.

121.    The defendants knew or should have been aware that this minor male student was in no different situation than Cassia.

122.    The defendants knew or should have known that this minor male student only rode the bus three times per week.

123.    Despite this knowledge, the defendants did not offer the Enrights the same or comparable services as offered to the parents of the minor male student.

124.    The change materially altered the transportation section of the agreed program to the detriment of Cassia as stated heretofore.

125.    Defendants while acting under color of state law violated and knew or should have known that they violated Cassia Enright's rights as guaranteed by State and Federal Law and the State and Federal Constitution by changing transportation and thereby creating a danger which caused harm to Cassia -- to wit transporting her with non-age appropriate and emotionally disturbed male adolescents without adequate safety precautions and supervision.

126.    The conduct of the named defendants  was  based on action or inaction of the defendants which was deliberately indifferent to and in violation of rights guaranteed to  Cassia Enright by law.

127.    The actions of the defendants were proximately related to the deprivation and loss of her constitutional rights as guaranteed by law.

128.    Cassia Enrights' denial of her rights under the Constitution of the United States as guaranteed by law, were proximately related to the actions and inactions of the defendants,  by

ignoring the negligent, reckless, arbitrary and capricious conduct of its employees, to wit - the transportation of vulnerable female, disabled student, with non-age appropriate male students, without instruction, training or proper supervision.

129.    As a result of this wrongful actions, plaintiff has suffered humiliation and distress.

130.    Defendant O'Brien and Springfield School District are liable for the wrongful conduct of the District employees, as the decision makers conceived and implemented a policy and practice of failing to train bus personnel and employees to protect Cassia Enrights'.

131.    Defendants are liable for the wrongful conduct of the School District employees, as the decision makers failed to train and supervise its supervisors, agents and employees to avoid such pervasive and offensive hostile conduct against known vulnerable female students.

132.    Defendants are liable for the wrongful conduct of their employees, as the decision makers permitted and condoned a  policy and practice not properly training said persons.

133.    As a result of defendants' wrongful conduct, plaintiff suffered the harm and damages averred to above.

**COUNT III**

PLAINTIFFS V. INDIVIDUAL DEFENDANT
AND THE SPRINGFIELD SCHOOL DISTRICT
PURSUANT TO 42 U.S.C. § 1983
BREACH OF A SPECIAL CUSTODIAL ARRANGEMENT

134.    Plaintiff incorporates by reference ¶¶ 1 to 105 as if fully set out herein .

135.    The conduct of the named defendants  was  based on action or inaction of the defendants which was deliberately indifferent to and in violation of rights guaranteed to  Cassia Enrights' by law.

136.    The actions of the defendants were proximately related to the deprivation and loss of her constitutional rights as guaranteed by law.

137.    As a result of this wrongful actions, Cassia has suffered trauma and distress.

138.    Defendant O'Brien and Springfield School District are liable for the wrongful conduct of the School District employees, as the decision makers conceived and implemented a policy and practice of failing to train bus personnel and employees to protect Cassia Enrights'.

139.    Defendants are liable for the wrongful conduct of the employees, as the decision makers failed to train and supervise its supervisors, agents and employees to avoid such pervasive and offensive hostile conduct against known vulnerable female students.

140.    Defendants are liable for the wrongful conduct of their employees, as the decision makers permitted and condoned a  policy and practice not properly training said persons.

141.    As a result of defendants' wrongful conduct, plaintiff suffered the harm and damages

averred to above.

## COUNT IV
PLAINTIFFS v. ALL DEFENDANTS
VIOLATION OF THE FOURTEENTH AMENDMENT
STATE CREATED DANGER

142.    Plaintiff's hereby incorporate by reference allegations 1 to 105 as if set out herein.

143.    The defendants knew or should have known of the past emotional and inappropriate

behavior of the adolescent male students.

144.    The defendants, based on this knowledge should have anticipated that the adolescent male

emotional disturbed students would prey upon a vulnerable minor female student.

145.    The harm ultimately caused to Cassia was foreseeable and fairly direct.

146.    The defendants acted in willful disregard for the safety of Cassia.

147.    There was a specific relationship between Cassia and the defendants -- in that she was a

special needs student in their care and protection as required by law.

148.    The defendants used their authority to create the opportunity for harm that otherwise

that would not have existed by changing the transportation for Cassia and failing to assure for

proper supervision of the students during transit.

149.    The defendants' actions were predicated in a failure to act in light of a known risk.

150.    The defendants' actions manifested a disregard of a high and excessive degree of danger,

known to them or apparent from a reasonable person in their position.

151.    The actions of the defendants were outrageous and willful or in such a negligent manner as

21

to rise to the level of outrageousness and willfulness.

## COUNT V

42 U.S.C. Section 1983
PARENTS v. DEFENDANTS - VIOLATION OF LIBERTY INTEREST

152.    Plaintiffs repeat and reallege ¶¶ 1 to 105 as if set out herein.

153.    Sharon and Donald Enrights'  possessed a liberty interest, guaranteed by the Due Process

Clause of the 14th Amendment to the United States Constitution, in the parenthood and

companionship of their minor child, Cassia and the maintenance and integrity of their family.

154.    The actions of the defendants in unilaterally changing the agreed upon transportation for

Cassia, as set out more specifically hereinbefore, was the proximate cause of the loss and

diminution of these rights.

155.    Sandra and Donald Enrights' suffered damage, trauma and distress as more specifically

stated hereinbefore, proximately caused by the aforestated conduct of the defendants.

## COUNT VI

42 U.S.C. Section 1983- RETALIATION FOR EXERCISE
OF CONSTITUTIONAL AND STATUTORY RIGHTS

156.    The plaintiffs repeat and reallege paragraphs 1 to 105 as if set out herein.

157.    Plaintiffs complaints and reports concerning Cassia's assault concerned important issues

of public interest and were protected by the First Amendment to the Constitution of the United

States and implicitly by the relevant Federal Statutes.

22

158.     After these complaints that Cassia was not properly provided safe transportation as required by law and proximately related thereto, the agents and employees of the defendants engaged in a pattern of retaliatory conduct.

159.     The conduct of the defendants was taken in retaliation of the plaintiffs exercise of his rights and duties under the First Amendment to the Constitution of the United States and deprived plaintiffs of constitutional rights as guaranteed by law.

160.     As a result of this wrongful retaliation, plaintiffs have suffered economic losses as well as humiliation and emotional distress.

161.     Defendants are liable for the wrongful conduct of the School District employees, as the decision makers conceived and implemented a policy and practice of retaliating against plaintiffs in the exercise First Amendment rights.

162.     As a result of defendants' wrongful conduct, plaintiff suffered the harm and damages averred to above.

## COUNT VII

MONETARY DAMAGES FOR VIOLATIONS OF THE
IDEA, ADA AND SECTION 504

163.     Plaintiffs repeat ¶¶ 1-105 as if set out herein.

164.     The defendants had a duty under law to provide Cassia Enrights' with an appropriate education, including appropriate ancillary services such as safe transportation.

165.     In negotiated IEP (prior to the April 22, 2002 incident),  the defendants agreed to provide

23

Cassia with appropriate transportation to and from Woodlynde School.

166.    The defendants unilaterally changed the mode of transportation, which was set out in the last negotiated IEP.

167.    This change was not done pursuant to a new IEP.

168.    The change was not provided to the Enrights' family in writing.

169.    The Enrights' family was not provided an oral or written notice of any due process rights related to this change.

170.    The defendants represented to the Enrights that the new transportation would be appropriate and safe for Cassia, without any basis for this representation.

171.    Relying on that representation, the Enrights acceded to the unilateral change by the defendants.

172.    In addition, without the knowledge of the Enrights, the defendants agreed to provide a minor male student of Cassia's age with an aide on the new transportation arrangement.

173.    The defendants knew or should have been aware that this minor male student was in no different situation than Cassia.

174.    The defendants knew or should have known that this minor male student only rode the bus three times per week.

175.    Despite this knowledge, the defendants did not offer the Enrights the same or comparable services as offered to the parents of the minor male student.

176.    The change materially altered the transportation service section of the IEP to the

detriment of Cassia as stated heretofore.

177.    The defendants actions proximately caused a violation of the rights guaranteed to Cassia

under the IDEA, the ADA and Section 504.

178.    Cassia was injured as a result of these violations in a manner set out hereinbefore.

**DEMAND FOR A JURY**

Pursuant to the Federal Rules, plaintiffs demand a trial by jury on all causes triable to a

jury.

**PRAYER FOR RELIEF**

Wherefore, the plaintiff demands trial by jury and:

A.      Judgment  for economic losses and compensatory damages in an amount in excess

of the limit for compulsory arbitration.

B.      Punitive and exemplary damages as permitted by law against any defendant;

C.      For the violation of any claim providing for equitable relief, appropriate injunctive

relief as necessary and proper.

D.      Attorney fees and costs pursuant to 42 U.S.C. § 1988 and other federal law.

E.      Such other relief as the court deems fitting and just.

Respectfully submitted,


_____
Gerald J. Williams, PA. I.D. No.36418
Andrew F. Erba, PA. I.D. No. 20943
WILLIAMS, CUKER BEREZOFSKY
One Penn Center at Suburban Station
1617 J.F.K. Boulevard, Suite 800
Philadelphia, PA 19103-2030
(215) 557-0099

dated:  April 15, 2004